RIVERTON PRODUCE CO. and
Cox Grain Company, Plaintiffs–
Appellees/Cross–Appellants,

v.

STATE of Colorado; The Department of
Revenue for the State of Colorado; John
J. Tipton, in his official capacity as Ex-
ecutive Director of the Department of
Revenue; Dee Hartman, in his official
capacity as Director, Motor Vehicle Di-
vision, Department of Revenue; Larry
D. Huls, in his official capacity as Assis-
tant Director, Motor Vehicle Division,
Department of Revenue; Jean Gouin, in
her official capacity as Program Admin-
istrator, Motor Vehicle Division, Depart-
ment of Revenue; Jaki Berry, in her
official capacity as Administrative Offi-
cer, Motor Carrier Services, Motor Vehi-
cle Division, Department of Revenue;
and Mark S. Eckert, in his official ca-
pacity as County Clerk, Mesa County,
State of Colorado, Defendants–Appel-
lants/Cross–Appellees.

No. 92SA493.

Supreme Court of Colorado,
En Banc.

April 4, 1994.

As Modified on Denial of Rehearing
May 2, 1994.

King & Isaacson, P.C., Scott E. Isaacson, Salt Lake City, UT, Snow Hutchison & Neider, Richard Hutchison, Murray, UT, for plaintiffs-appellees/cross-appellants.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Larry A. Williams, First Asst. Atty. Gen., Mark W. Gerganoff, Asst. Atty. Gen., General Legal Services Section, Denver, for defendants-appellants/cross-appellees State of Colorado, the Dept. of Revenue of State of Colo., John J. Tipton, Dee Hartman, Larry D. Huls, Jean Gouin and Jaki Berry.

Alan N. Hassler, Asst. County Atty., Grand Junction, for defendant-appellant/cross-appellee Mark S. Eckert.

Justice MULLARKEY delivered the Opinion of the Court.

The State of Colorado, its Department of Revenue, and various state officials appeal

the trial court's ruling declaring sections 42–3–123(13)(b) and (b.3) and section 42–3–105, 17 C.R.S. (1991), pertaining to the registration and taxation of interstate and intrastate motor vehicle carriers in Colorado, facially unconstitutional under the Commerce Clause of the federal constitution.[1] The State also appeals the trial court's finding that the Department of Revenue violated the Commerce Clause when it applied the revised registration fee schedule in sections 42–3–123(13)(b) and (b.3) to plaintiffs Riverton Produce Co. (Riverton) and Cox Grain Company (Cox) for the 1990 calendar year. Plaintiffs cross-appeal the trial court's ruling denying their claims for attorney fees pursuant to 42 U.S.C. sections 1983 and 1988 (1988). For the reasons stated below, we affirm in part, reverse in part and remand the case to the trial court for further proceedings consistent with this opinion.

I

The following facts as found in the record are relevant to our disposition of this appeal.

*Senate Bill 159*

Historically, Colorado was one of a majority of states which maintained a three-tiered system for registering and taxing motor vehicle carriers. That system consisted of a special fuel tax, a nominal registration fee, and a gross ton-mile tax.[2] By 1989, however, most jurisdictions had abandoned the three-tiered system in favor of a simpler program which eliminated the gross ton-mile tax and increased the registration fee. Critics of the

gross ton-mile tax system pointed to its high administrative costs and its vulnerability to fairly basic tax evasion techniques. In response to these concerns, the General Assembly considered possible revenue-neutral alternatives to the gross ton-mile system. Senate Bill 159 was the product of those efforts.

Senate Bill 159 eliminated the gross ton-mile tax and increased the registration fee from a flat $22.50 per vehicle to a range of fees calculated according to the weight of the vehicle and its annual mileage in Colorado. *Compare* § 42–3–123(13)(c), 17 C.R.S. (1984) *with* §§ 42–3–123(13)(b) .& (b.3), 17 C.R.S. (1993). For trucks over 16,000 pounds gross vehicle weight[3] operating solely within Colorado, the new fees range from $180 to $1,800 per year. § 42–3–123(13)(b). For comparable trucks "used in interstate commerce," the fees range from $1,050 to $1,800. § 42–3–123(13)(b.3). Plaintiffs contend that these two statutory provisions effectively create a low-mileage discount for intrastate trucks operating fewer than 30,000 miles per year in Colorado which is not available to interstate trucks.[4] Those intrastate trucks operating over 30,000 miles per year in Colorado, however, are subject to the same registration fee schedule as interstate trucks.

*The Distinction Between Apportioned and "Full Plate" Registration*

The record reveals that during the six-month interval between the date Senate Bill 159 was signed into law (June 1, 1989) and the date it was to become effective (January 1, 1990), it became apparent to the Depart-

---

1. Because the decision below involved a determination of the constitutionality of a statute, this court has jurisdiction to resolve the appeal. *See* § 13–4–102(1)(b), 6A C.R.S. (1987).

2. The gross ton-mile tax was a tax upon "each gross ton of empty weight" and "each gross ton of cargo weight" moved for a distance of one mile over Colorado's public highways, calculated according to the following rates:

 (I) Eight-tenths of one mill upon each gross ton-mile of empty weight;

 (II) Two mills upon each gross ton-mile of cargo weight.
 § 42–3–123(14)(a), 17 C.R.S. (1984).

3. Plaintiffs do not challenge Colorado's registration system as it applies to vehicles weighing less than 16,000 pounds. *See* § 42–3–123(13)(a).

4. This discrepancy is the basis for plaintiffs' claim, discussed *infra* in Part III B of this opinion, that the revised fee schedule facially discriminates against interstate commerce.

ment of Revenue that the process of phasing in the new registration system and phasing out the prior one would be impossible to complete by January 1, 1990.[5] The problem facing the Department of Revenue was the fact that under the gross ton-mile system in effect in 1989, *intra* state trucks registered for twelve-month periods on a staggered or rolling basis, whereas *inter* state trucks were required to register by the end of December each year (with a one-month grace period) for the next calendar year.

This difference in billing procedures was compelled by the fact that Colorado, along with a majority of states and Canada, participates in an apportioned registration scheme known as the "International Registration Plan" or "IRP." Because interstate carriers must register in each jurisdiction in which they operate, the IRP permits them to register their vehicles annually in one "base" jurisdiction and to obtain credentials to operate in numerous other IRP jurisdictions. An interstate carrier who registers through the IRP pays a full annual registration fee to its base jurisdiction, which in turn transmits a percentage of that registration fee to the various IRP jurisdictions in which the carrier operates, apportioned according to the mileage driven during the preceding year in each jurisdiction.[6] IRP-based vehicle registrations expire on December 31 of each year,

and IRP carriers have until January 31 of the ensuing year to renew their registrations. *See* Regulation 3–101.1(II)(B)(b), 1 C.C.R. 204–9 (1979).

For the *intra* state truck owner, however, the procedure is similar to that used when registering an automobile in Colorado. The intrastate carrier must apply to the local county clerk's office for a license to operate its trucks for a one-year period commencing upon receipt of the license. Thus, the renewal process for intrastate carriers occurs on a rolling basis throughout the calendar year. This license procedure is also known as a "full-plate" registration, as distinct from the apportioned registration procedure used by the IRP.

### Backbilling the Intrastate Carriers

According to the affidavit of defendant-appellant Jaki Berry (Berry) of the Department of Revenue, the computer used by the various counties to generate registration fee bills for intrastate carriers was only programmed to calculate amounts due the State of Colorado during the month in which the registration plates for each vehicle expired. Therefore, the State's computer was incapable of generating a bill for intrastate trucks reflecting the new fees in effect as of January 1, 1990, because the vehicle information for such carriers was not available as of

**5.** Although the trial court did not make any factual findings in its order regarding the implementation of Senate Bill 159's new registration fees, the record includes affidavits and deposition transcripts describing in detail the Department of Revenue's efforts in this regard.

**6.** The United States Supreme Court described this apportionment principle as follows:

Participants in [the IRP] share the registration fees for vehicles based in their states with other IRP States in which the vehicles travel. The percentage of each vehicle's total registration fee that is allocated to each IRP State other than the State in which the vehicle is based is determined by dividing the total number of miles the vehicle traveled within the IRP State during the preceding year by its total mileage. The total fee payable to each State is the product of each State's total fee for full registration of each vehicle and that State's

percentage share of the vehicle's mileage. Thus, if 30% of the mileage of a Pennsylvania-based vehicle was accrued in other States, Pennsylvania's share of the registration fee would be 70% of the full amount specified in its statutory schedule. On the other hand, if a vehicle based in another IRP State logged 40% of its mileage in Pennsylvania, its owner would be required to pay that portion of the Pennsylvania fee schedule to Pennsylvania.... In sum, the amount of each truck's registration fee is determined by the weight of the vehicle and, if the truck travels in other IRP States, in part by its in-state mileage. No vehicle is required to pay more than one full registration fee.

*American Trucking Assns., Inc. v. Scheiner,* 483 U.S. 266, 271–73, 107 S.Ct. 2829, 2834, 97 L.Ed.2d 226 (1987).

December 1989.[7]

In response to this situation, Berry and defendant-appellant Larry D. Huls (Huls), Assistant Director of the Department of Revenue's Division of Motor Vehicles, decided that the most appropriate procedure by which to implement Senate Bill 159's new fee schedule would be, first, to charge all interstate trucks the new fees when they registered in late 1989 for the 1990 calendar year.[8] Next, Berry and Huls determined that as a temporary measure, the Department should continue to charge the lower 1989 fees to those intrastate carriers whose old licenses expired in December (the "December expires"),[9] until such time as the information was available with which to backbill those carriers for the difference between the 1989 and 1990 rates. As the State concedes on appeal, this strategy created a short-term, one-time [10] "disparity" in the statute's application between interstate and intrastate carriers. At oral argument before this court, the State indicated, however, that this "disparity" was eliminated when it backbilled all but two of the intrastate carriers with "December expires" for the difference between the 1989 and 1990 registration fees.

Although Cox complied with the Department of Revenue's implementation policy and paid the higher fees in Senate Bill 159 for the 1990 registration cycle, it did so under protest. Cox paid $35,545.11 to the IRP office in Denver in January 1990 to register its interstate vehicles for that calendar year. Cox claims that it would only have paid $2,200 had the State correctly permitted it to register its trucks under the 1989 fee schedule applicable to intrastate carriers who registered prior to January 1, 1990.

Riverton, however, followed a different strategy. It chose to register its vehicles with the Mesa County Clerk's Office prior to January 1, 1990 in an attempt to avoid the higher fees of Senate Bill 159 for the 1990 registration year.[11] The idea was to avoid the apportioned IRP fee for Riverton's mileage in Colorado by registering some of its vehicles as *intra* state carriers in the county in which those vehicles were based. The vehicles Riverton chose to register with Mesa County were those trucks and trailers which it had leased to City Market, Inc. (City Market), a Colorado-based corporation which used the Riverton vehicles in interstate commerce. Thus, Riverton registered some of its interstate vehicles under the IRP in Utah while simultaneously registering its City Market vehicles with Mesa County. The Department of Revenue concedes that as a matter of practice only intrastate carriers were permitted to obtain full-plate registra-

7. The Department of Revenue contends that even if such information had been available prior to January 1, 1990, the new billing system would not have been operational for at least several months due to the time needed to train county employees state-wide on the new system.

8. According to the Department of Revenue, applying the new fee schedule to interstate carriers for the 1990 year was administratively feasible because of the requirement under the IRP that each interstate carrier renew its registration at the end of the calendar year.

9. For those intrastate trucks whose registrations expired prior to December 1989, the Department concluded that the 1989 fees should apply, rather than attempting to back-bill such carriers on a pro-rata basis. Plaintiffs claim that this decision constituted a separate violation of the Commerce Clause by discriminating among intrastate carriers on the basis of their registration dates. We understand that some of the December expires are challenging in district court the state's back-

billing procedures as applied to them. The issue of the propriety of the backbilling procedures as among the intrastate carriers is not before us, however, in this case. Without the proper parties before us, we must assume for the purposes of this opinion that the backbilling procedures employed by the State were proper in this regard.

10. Plaintiffs do not challenge the manner in which the revised registration provisions have been administered since 1990.

11. Apparently, Riverton had received information in the fall of 1989 from a vehicle consulting firm known as International Trucking Service, Inc. (ITS), in which ITS asserted that by registering at the county level (in the same manner as an intrastate carrier), a non-Colorado-based interstate carrier registered with the IRP in another state, such as Riverton, could avoid the higher registration fees imposed by Senate Bill 159.

tion at the county level. However, it agreed to Riverton's request to register its trucks with Mesa County in response to a threat from Riverton's attorney that a lawsuit would be filed if Riverton were not permitted to do so. Accordingly, Riverton paid $18,024.15 to Mesa County to obtain full-plate registration for its City Market vehicles for the twelve month period beginning in December 1989.

Several months later, in May 1990, the Department of Revenue sent a letter (the "Berry Letter") to all interstate carriers registered to operate in Colorado, stating that pursuant to House Bill 1148 (signed into law on April 16, 1990), all interstate carriers with vehicles registered through the local county clerk must immediately apply to the IRP Section in Denver for apportionment registration of those vehicles.[12] The Berry Letter specifically stated that "a *credit* of unused taxes paid at the county" level would be applied towards the cost of the IRP registration. After receiving that letter, Riverton chose to register the City Market vehicles with the IRP Section in Utah for 1990. Thereafter, Riverton requested a *refund* of the $18,024.15 paid to Mesa County for the full-plate registration. The Department of Revenue and the Mesa County Clerk's Office denied this request, stating that they had no obligation or authority to refund amounts paid to the county when Riverton reregistered those vehicles under the IRP in another state. On appeal, Riverton argues that because the Department of Revenue refused to refund the fees it paid to Mesa County, it was in the same position as Cox, that is, it was denied the opportunity to pay the lower fees in effect in 1989 even though it renewed its registration prior to January 1, 1990.

## II

Before we examine the trial court's ruling on plaintiffs' three Commerce Clause claims, we must address two preliminary issues raised by the parties on appeal. The first issue is whether the State unlawfully applied

certain provisions of Senate Bill 159, codified at sections 42–3–123(13)(b) and (b.3), prior to their effective date. The second issue is whether the trial court erred in denying the State's motion to dismiss Riverton from this action.

### A

■ Plaintiffs contend that we need not decide whether the State of Colorado violated the Commerce Clause in this case, because the Department of Revenue's decision to charge the plaintiffs the increased registration fees of Senate Bill 159 for the 1990 calendar year lacked any statutory authorization. More specifically, plaintiffs claim that because Senate Bill 159's increased registration fee schedule was expressly intended to become effective on January 1, 1990, see Ch. 356, sec. 26, § 42–3–123(13), 1989 Colo.Sess. Laws 1583, 1601, it was unlawful for the Department of Revenue to apply the higher fees to those interstate carriers, including plaintiffs, who allegedly renewed their registrations on or before December 31, 1989. We disagree.

Our primary task in construing a statute is to give effect to the intent of the General Assembly. *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991); *see also Tacorante v. People,* 624 P.2d 1324, 1330 (Colo.1981) ("The general canons of statutory construction may be applied to determine the correct effective date of a statute.") Accordingly, a statute should not be construed in a manner which would defeat the obvious legislative intent. *Adrian v. People,* 770 P.2d 1243, 1247 (Colo.1989); *People v. District Court,* 713 P.2d 918, 921 (Colo.1986). To discern that intent, a court should look first to the language of the statute, *Rowe v. People,* 856 P.2d 486, 489 (Colo.1993), and construe statutory terms according to their commonly accepted meaning. *Meyers v. Price,* 842 P.2d 229, 231 (Colo.1992).

In the instant case, plaintiffs contend that when the legislature indicated that the high-

---

**12.** House Bill 1148 has been codified at sections 42–3–105 & –106, 17 C.R.S. (1993). These pro-visions are discussed in detail *infra* in Part III C of this opinion.

er registration fees would become "effective" on January 1, 1990, it intended to create an implicit window of opportunity for interstate carriers to avoid those higher fees simply by completing their 1990 registration renewal forms prior to that date. Such a proposition is highly implausible, however, when we consider that the annual registration cycle for interstate carriers in Colorado begins on January 1 of each year and ends on December 31. Although the Department of Revenue does permit interstate carriers to submit their renewal forms in advance of December 31,[13] it is clear that a carrier which pays in advance to register its trucks for the 1990 calendar year is purchasing a permit to operate its vehicles in Colorado *starting January 1, 1990.* Therefore, the fee schedule in effect on January 1, 1990 governs registration applications for that calendar year. To interpret the statute as plaintiffs suggest would defeat the obvious intent of the General Assembly to apply the revised registration provisions of Senate Bill 159 to motor vehicle carriers using Colorado's public highways in 1990. Under their view, the effective date of the statute would become January 1, 1991 and not January 1, 1990 as the legislature expressly stated. Thus, we reject plaintiffs' initial claim that the Department of Revenue unlawfully applied Senate Bill 159 to interstate carriers prior to its effective date.

### B

Next, the State contends that the trial court should have granted its motion to dismiss Riverton from this action because (1) Riverton was not an operator of motor vehicles "used in interstate commerce" for purposes of Colorado's registration and taxation statutes,[14] *see* §§ 42–3–101 to –134, 17 C.R.S. (1993), and (2) the "real party in interest" in this case was Riverton's lessee, which did not assign its right to pursue this action to Riverton. Riverton denies both claims by citing its truck lease agreement with City Market.

Under the terms of that lease, Riverton agreed to reimburse City Market for all ownership taxes and registration fees incurred by City Market in connection with the operation of Riverton's trucks.

 The trial court specifically found that Riverton paid all the fees which are the subject of this action, making Riverton the real party in interest in this action and effectively eliminating any potential exposure on the part of the State to dual liability for the same claim from City Market. That finding is supported by the record.

 We also agree with the trial court's conclusion that Riverton was an interstate carrier for purposes of this appeal. Because Riverton was the owner of motor vehicles operated in interstate commerce for the relevant time period, it was legally accountable for the fees and taxes incurred by such vehicles in Colorado. § 42–3–102(1) (applying Colorado's registration and taxation provisions to "every *owner* of a motor vehicle") (emphasis added). Thus, even though it was a lessor and not the actual operator of the trucks in question, Riverton was liable for any taxes owed by such vehicles. Since the vehicles leased to City Market were subject to tax in 1990 as vehicles "used in interstate commerce," Riverton is properly viewed as an interstate carrier.

We therefore find no error in the trial court's denial of the State's motion to dismiss Riverton from this action.

### III

We now turn to the Commerce Clause claims which form the basis of the trial court's order as to the constitutionality of the State's registration and taxation scheme. The State first contends that the trial court erred when it found that the State discriminated against plaintiffs as interstate carriers by requiring them to comply in 1990 with

---

13. *See* Regulation 3–101.1(II)(B)(b), 1 C.C.R. 204–9 (1979).

14. The State does not dispute, however, the fact that plaintiff Cox operated 37 trucks and trailers "in interstate commerce" for all of 1989 and through June of 1990.

Senate Bill 159's revised registration fee schedule, while permitting intrastate carriers to register under the reduced 1989 fee schedule.

### A

■ It has long been established that the Commerce Clause of the United States Constitution not only grants Congress the authority to regulate commerce among the several states, but also directly limits the power of the states to discriminate against interstate commerce. U.S. Const. art. I, § 8, cl. 3; *Quill Corp. v. North Dakota,* ── U.S. ──, ──, 112 S.Ct. 1904, 1911, 119 L.Ed.2d 91 (1992); *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988); *Armco Inc. v. Hardesty,* 467 U.S. 638, 642, 104 S.Ct. 2620, 2622, 81 L.Ed.2d 540 (1984); *Archer Daniels Midland Co. v. State, Dep't of Revenue,* 690 P.2d 177, 182 (Colo.1984). This "negative" aspect of the Commerce Clause prohibits "economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy,* 486 U.S. at 273–74, 108 S.Ct. at 1807.

■ "A state tax which burdens interstate commerce is not *per se* invalid because it burdens interstate commerce since interstate commerce may constitutionally be made to pay its way." *Maryland v. Louisiana,* 451 U.S. 725, 754, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981). A state's right to tax interstate commerce is limited, however, and no state tax will be sustained unless it satisfies the four-part test announced in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Under *Complete Auto,* a state tax that impacts interstate commerce does not violate the Commerce Clause if the tax: (1) is applied to an activity with a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the taxing state. 430 U.S. at 279, 97 S.Ct. at 1079; *accord Amerada Hess*

*Corp. v. New Jersey Taxation Div.,* 490 U.S. 66, 72–79, 109 S.Ct. 1617, 1621–25, 104 L.Ed.2d 58 (1989); *Goldberg v. Sweet,* 488 U.S. 252, 259–60, 109 S.Ct. 582, 587–88, 102 L.Ed.2d 607 (1989); *American Trucking Assns., Inc. v. Scheiner,* 483 U.S. 266, 291, 295–96, 107 S.Ct. 2829, 2846–47, 97 L.Ed.2d 226 (1987). Plaintiffs contend that the State violated prong three of *Complete Auto* when it discriminatorily applied Senate Bill 159 to interstate carriers only. We disagree.

■ A state tax violates the third prong of the *Complete Auto* test if it is facially discriminatory, has a discriminatory purpose or has the effect of unduly burdening interstate commerce. *Amerada Hess,* 490 U.S. at 75, 109 S.Ct. at 1622–23; *Caterpillar, Inc. v. Department of Treas.,* 440 Mich. 400, 488 N.W.2d 182, 192 (1992). Even a facially neutral statute can be held to violate the Commerce Clause if the state *enforces* the statute in a manner that favors intrastate carriers over interstate carriers. *See Amerada Hess,* 490 U.S. at 75–77, 109 S.Ct. at 1622–24.

■ However, absolute parity between interstate and intrastate commerce is not required under the Commerce Clause. *See, e.g., Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 278, 98 S.Ct. 2340, 2347, 57 L.Ed.2d 197 (1978) (rejecting argument that Commerce Clause requires exact precision in interstate taxation); *Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 332, 97 S.Ct. 599, 608, 50 L.Ed.2d 514 (1977) (requiring "substantially even treatment" of in-state and out-of-state interests); *Lone Star Steel Co. v. Dolan,* 668 P.2d 916, 926 (Colo.1983) (holding that some double taxation of interstate commerce does not violate Commerce Clause even though intrastate commerce not subjected to such a burden). Moreover, the states retain flexibility to fashion taxes in any manner not inconsistent with constitutional principles, and the United States Supreme Court has expressly "declined to undertake the essentially legislative task of establishing a 'single constitutionally mandated method of taxation.'" *Goldberg,* 488 U.S. at 261, 109 S.Ct. at 588; *see also Norfolk & Western*

*R.R. Co. v. Missouri State Tax Comm'n*, 390 U.S. 317, 324–29, 88 S.Ct. 995, 1000–03, 19 L.Ed.2d 1201 (1968) (describing the wide latitude given to states under Commerce Clause to devise formulas for taxing in-state property).

The parties advance two competing characterizations of the events in question. Plaintiffs claim that the State discriminatorily applied Senate Bill 159, and then attempted, unsuccessfully, to remedy that constitutional violation through its backbilling procedure.[15] By contrast, the State claims that the initial application of Senate Bill 159 to interstate carriers, followed soon thereafter by the backbilling of intrastate carriers, were both integral and necessary parts of a gradual implementation procedure designed to avoid any differential treatment of in-state and out-of-state interests caused by their distinct registration cycles. Upon review of the entire record, we find the State's view more persuasive.

■ Where application of a state tax is alleged to violate the Commerce Clause, it "must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme." *Maryland v. Louisiana*, 451 U.S. at 756, 101 S.Ct. at 2134; *cf. State Highway Comm'n v. Haase*, 189 Colo. 69, 70–72, 537 P.2d 300, 304–05 (1975) (statutory provision interpreted in light of entire legislative scheme). Thus, the question before us is not whether application

of Senate Bill 159 to interstate carriers but not intrastate carriers, by itself, would have violated the Commerce Clause,[16] but rather whether the State's efforts *as a whole* to implement that statute in 1990 amounted to unconstitutional discrimination.

The record reveals that the Department of Revenue was aware in late 1989 that to apply Senate Bill 159 for the 1990 calendar year, as the legislature intended, it would be necessary to backbill those intrastate carriers for whom registration information was not available in January 1990. We disagree with plaintiffs' view that the State's only option in this case was to forego application of the new registration provisions until such time as the State could simultaneously apply the tax to both interstate and intrastate carriers. The State made a reasonable decision unrelated to economic protectionism to backbill intrastate carriers as a means of equalizing the impact of the new registration provisions on interstate and intrastate commerce.[17] There is no evidence in the record to suggest that the Department of Revenue's implementation strategy was prompted by any intent to promote intrastate commerce. Rather, the decision to backbill intrastate carriers was made in response to the realization in the fall of 1989 that administrative difficulties limited the State's ability to enforce the new registration provisions for all carriers as of January 1, 1990.

With the backbilling process now complete, and because this was a one-time event, the only "disparity" that actually existed in the implementation of the new fee schedule in

**15.** Plaintiffs claim that the State's backbilling program constitutes an admission that the State violated the Commerce Clause by discriminating against interstate commerce. The State, however, has never conceded that its implementation of Senate Bill 159 was discriminatory. Rather, it has argued consistently that a temporary "disparity" in treatment does not violate the Commerce Clause if it is unrelated to economic protectionism.

**16.** This appears to be the approach taken by the trial court. In its order, the trial court concluded that because the State "charged the increased 1990 fees to interstate carriers when they registered their trucks in late 1989 but allowed intrastate carriers to register their trucks in late 1989 under the reduced 1989 fee schedule," the State

violated the Commerce Clause. The trial court order makes no mention, however, of the State's efforts to backbill the intrastate carriers for the increased 1990 fees.

**17.** Plaintiffs argue that this court should not consider the backbilling process as part of the State's efforts to implement Senate Bill 159, because the State's decision to backbill only those intrastate carriers with December expires violated several provisions of the Colorado and federal constitutions. As noted in footnote 9, *supra*, we decline to address the issue of the propriety of the backbilling procedures as among the intrastate carriers because the issue is not properly before us. Instead we assume for purposes of this opinion that the backbilling procedures employed by the State were proper.

1990 was that interstate carriers were charged the increased registration fees sooner than intrastate carriers.[18] In our view, the State has met its burden of showing that such a disparity in treatment was justified under the circumstances. *Cf. Scheiner*, 483 U.S. at 297, 107 S.Ct. at 2847 (holding that a state must apportion the costs of a highway use tax unless "administrative difficulties make collection of more finely calibrated user charges impracticable"); *American Trucking Assns., Inc. v. Secretary of State*, 595 A.2d 1014, 1017–18 (Me.1991) (burden upon the state to establish the impracticability of more precise apportionment). Therefore, we conclude that the State's application of Senate Bill 159 did not unconstitutionally discriminate against interstate commerce.[19]

## B

■■■■ Cox next claims that sections 42–3–123(13)(b) and (b.3), which provide lower registration fees for intrastate carriers traveling fewer than 30,000 miles annually in Colorado than for similarly-situated interstate carriers, are facially violative of the Commerce Clause.[20] We agree.

As part of Senate Bill 159, the General Assembly created a new registration fee schedule for trucks with a declared gross vehicle weight (GVW) greater than 16,000 pounds. This new schedule consists of two distinct fee tables for intrastate and interstate carriers. *Compare* § 42–3–123(13)(b) (intrastate carriers) *with* § 42–3–123(13)(b.3) (interstate carriers). For interstate carriers, the registration fees range from $1,050 per vehicle with a GVW between 16,001 and 20,000 pounds to $1,800 per vehicle with a GVW over 74,000 pounds.[21] For vehicles which are *not* used in interstate commerce, *and which accrue over 30,000 miles annually*, the registration fee schedule is the same as that pro-

18. Our decision in *Nuttall v. Leffingwell*, 193 Colo. 137, 563 P.2d 356 (1977), is instructive on this issue. In that case, several taxpayers challenged a county assessor's revaluation of their land for tax purposes pursuant to a state-wide cyclical tax revaluation plan. In implementing the new plan, the county revalued one third of all taxable property in each of the years 1965, 1966 and 1967. Because the taxpayers' property was revalued in the first phase of the cyclical program, its assessed value for tax purposes increased sooner than similar property which was not revalued until the second or third phases of implementation. The taxpayers claimed that this temporal disparity violated, *inter alia*, the Colorado Constitution's guarantee of uniform taxation. *See* Colo. Const. art. X, § 3. We rejected that claim, holding that

> [T]he scheme employed by the county assessor was designed to implement the constitutional and statutory mandates of substantial uniformity. The temporary existence of differences in valuations which result from a systematic and definite revaluation plan such as the one involved here does not constitute discrimination of a nature violative of constitutional and statutory uniformity and equality requirements.

*Nuttall*, 193 Colo. at 140, 563 P.2d at 359.

19. Because we hold that the State's application of Senate Bill 159 did not violate the Commerce Clause, we need not reach plaintiffs' argument that the State's backbilling procedure failed to satisfy the requirement, under *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), that the State provide a "clear and certain remedy" for any erroneous or unlawful tax collection.

20. Riverton concedes that it does not have standing to raise this claim because Riverton did not operate any vehicles in 1990 which accrued fewer than 30,000 miles within Colorado. Cox, on the other hand, operated three vehicles in 1990 which accrued fewer than 30,000 miles in Colorado. The State contends that Cox nevertheless lacks standing to raise this claim because its fleet, as a whole, traveled more than 30,000 miles in Colorado in 1990. We disagree. The statute in question, section 42–3–123(13)(b), calculates the registration fee *per vehicle* and not per fleet of vehicles. *See* § 42–3–123(13)(b) (providing the "Registration Fee for Number of Miles Operated *by Vehicle* During Year") (emphasis added). Therefore, Cox has standing to challenge the statute's allegedly preferential treatment of intrastate vehicles which accrue fewer than 30,000 miles annually in Colorado.

21. The complete registration fee table for interstate carriers reads as follows:

| Declared Gross Vehicle Weight (Pounds) | Registration Fee |
| --- | --- |
| 16,001 but not more than 20,000 | $1,050 |
| 20,001 but not more than 24,000 | $1,100 |
| 24,001 but not more than 30,000 | $1,200 |

vided for interstate vehicles. § 42–3–123(13)(b)(I). However, for vehicles operated solely within Colorado and which accrue *30,000 or fewer miles annually*, a separate fee schedule exists.[22] Under that provision, the registration fees for intrastate vehicles range from $180 to $810, depending upon the weight of the vehicle and the annual miles accrued in Colorado. The effect of section 42–3–123(13)(b)(I), therefore, is to grant a low-mileage discount to intrastate vehicles which weigh over 16,000 pounds and accrue fewer than 30,000 miles in Colorado, without providing the same treatment for similarly-situated interstate vehicles.

Both parties agree that in order to be valid under the Commerce Clause, this low-mileage discount for intrastate carriers must sat-

isfy the four prongs of the *Complete Auto* test. Cox contends that sections 42–3–123(13)(b) and (b.3) violate the requirements in prongs two and three of *Complete Auto* that a state tax on interstate commerce be fairly apportioned[23] and nondiscriminatory. Because we agree with Cox that this low-mileage discount for intrastate carriers unconstitutionally discriminates against interstate carriers, we need not decide whether sections 42–3–123(13)(b) and (b.3) also violate the fair apportionment principle.

The low-mileage discount on its face discriminates against interstate commerce by providing a substantial tax benefit to a subset of intrastate carriers without offering the same benefit to similarly-situated interstate carriers. That is, owners of interstate vehi-

| | |
|---|---|
| 30,001 but not more than 36,000 | $1,250 |
| 36,001 but not more than 42,000 | $1,350 |
| 42,001 but not more than 48,000 | $1,400 |
| 48,001 but not more than 54,000 | $1,500 |
| 54,001 but not more than 60,000 | $1,525 |
| 60,001 but not more than 66,000 | $1,650 |
| 66,001 but not more than 74,000 | $1,700 |
| Over 74,000 | $1,800 |

§ 42–3–123(13)(b.3).

22. The relevant provision reads as follows:

| Declared Gross Vehicle Weight (Pounds) | Registration Fee for Number of Miles Operated by Vehicle During Year | | |
|---|---|---|---|
| | Less than 10,000 Per Year | 10,000 to 30,000 Per Year | Over 30,000 Per Year |
| 16,001 but not more than 20,000 | $180 | $370 | $1,050 |
| 20,001 but not more than 24,000 | 200 | 380 | $1,100 |
| 24,001 but not more than 30,000 | 250 | 410 | $1,200 |
| 30,001 but not more than 36,000 | 300 | 440 | $1,250 |
| 36,001 but not more than 42,000 | 350 | 470 | $1,350 |
| 42,001 but not more than 48,000 | 400 | 590 | $1,400 |
| 48,001 but not more than 54,000 | 420 | 640 | $1,500 |
| 54,001 but not more than 60,000 | 430 | 660 | $1,525 |
| 60,001 but not more than 66,000 | 440 | 720 | $1,650 |
| 66,001 but not more than 74,000 | 450 | 740 | $1,700 |
| Over 74,000 | 460 | 810 | $1,800 |

§ 42–3–123(13)(b)(I).

23. Specifically, Cox argues that this discount for intrastate carriers fails the "internal consistency" test established in *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545 (1983). Under *Container Corp.* and its progeny, a state tax must have "what might be called internal consisten-

cy—that is the [tax] must be such that if applied by every jurisdiction, there would be no impermissible interference with free trade." *Id.* at 169, 103 S.Ct. at 2942; *see also Scheiner*, 483 U.S. at 284, 107 S.Ct. at 2840; *Armco Inc.*, 467 U.S. at 644, 104 S.Ct. at 2623.

cles operating fewer than 30,000 miles nationally are required to pay between $1,050 and $1,800 annually to register their trucks in this state, while intrastate carriers operating fewer than 30,000 miles annually must pay only between $180 and $810 to use the same public highways.

The State contends, however, that in determining whether sections 42–3–123(13)(b) and (b.3) facially discriminate against interstate commerce, we should consider the fact that the registration fee interstate carriers pay to Colorado is apportioned under the IRP.[24] According to the State, because the registration fee paid by interstate carriers to Colorado is a factor of the percentage of miles operated by that carrier in this state, interstate carriers as a group are no worse off under the statute than intrastate carriers. We disagree.

As an initial matter, the simple fact that interstate carrier registration fees are apportioned between IRP jurisdictions does not bear upon the question of whether the low-mileage discount in this case is constitutional. For example, under section 42–3–123(13)(b.3), an interstate carrier, such as Cox, which operates 95% of its miles in Colorado must pay $1,700 ($1,800 × .95) for each vehicle it owns which operates between 10,001 and 30,000 miles annually. By contrast, an intrastate vehicle operating the same number of miles would be required to pay only $810. § 42–3–123(13)(b)(I). Therefore, the fact that Cox's fee was apportioned under

the IRP did not eliminate the facial disparity in the statute's treatment of interstate and intrastate carriers traveling fewer than 30,000 miles annually.

The State contends that the low-mileage discount nevertheless is permissible because the facial discrimination only affects a subset of interstate carriers. Once again, we disagree.

Even if we were to assume, as the State suggests, that the low-mileage discount only discriminates against interstate carriers operating 45% or more of their miles in Colorado,[25] that fact does not save the statute from constitutional infirmity. The United States Supreme Court has made it clear that where discrimination is patent or facially obvious, "neither a widespread advantage to in-state interests nor a widespread disadvantage to out-of-state competitors need be shown" to establish a Commerce Clause violation. *New Energy*, 486 U.S. at 276, 108 S.Ct. at 1809. "Varying the strength of the bar against economic protectionism according to the size and number of in-state and out-of-state firms affected would serve no purpose except the creation of new uncertainties in an already complex field." *Id.* at 276–77, 108 S.Ct. at 1809. Thus, we reject the State's claim that since the low-mileage discount may not place *all* interstate carriers at a competitive disadvantage vis-à-vis intrastate carriers, therefore the statute is constitutionally permissible.[26] Accordingly, we conclude that section 42–3–123(13)(b)'s low-mileage discount for in-

---

**24.** The State does not argue, however, that should this court conclude that the low-mileage discount is facially discriminatory, such discrimination is "justified by a valid factor unrelated to economic protectionism." *New Energy*, 486 U.S. at 274, 108 S.Ct. at 1808.

**25.** This argument ignores the fact that although an interstate carrier operating up to 45% of its miles in Colorado pays less than or equal the amount paid by an intrastate carrier to register in Colorado, the interstate carrier is still required to pay an additional amount for the privilege to operate in other states. Therefore, the interstate carrier pays more than one full registration fee solely due to Colorado's higher rates for interstate carriers.

**26.** Consideration of *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66

L.Ed.2d 659 (1981) (upholding Minnesota statute banning retail sale of milk in plastic nonreturnable cartons), and *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978) (upholding statute prohibiting any producer or refiner of petroleum products from operating a retail service station in Maryland), does not change our conclusion. Both of those cases involved *facially neutral* statutes which had the arguable effect of granting a competitive advantage to in-state businesses. In this case, the low-mileage discount provision facially discriminates against interstate commerce and is reviewed under a stricter standard. *Compare Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535–36, 57 L.Ed.2d 475 (1978) (subjecting facially discriminatory law to a "virtually per se rule of invalidity") *with Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844,

trastate carriers facially violates the Commerce Clause.

■ The parties agree that upon a finding of unconstitutionality this court should sever the low-mileage discount provisions from the rest of section 42–3–123(13)(b), thus leaving the same rate for all intrastate and interstate carriers. "As a general rule, if a statute is constitutional in one part and unconstitutional in another, the constitutional provision may be sustained and the unconstitutional stricken." *City of Lakewood v. Colfax Unlimited Ass'n, Inc.,* 634 P.2d 52, 70 (Colo.1981); *see also* § 2–4–204, 1B C.R.S. (1980). Where the invalid provisions in the statute are either pervasive or inextricably intertwined with the other valid provisions, however, the statute must be invalidated in its entirety. *Colorado Assoc. of Public Employees v. Board of Regents,* 804 P.2d 138, 147 (Colo.1990); *City of Lakewood,* 634 P.2d at 70.

In this case, the invalid low-mileage discount for vehicles traveling 30,000 or fewer miles annually is not inextricably linked to the registration fee schedule for intrastate carriers traveling over 30,000 miles. Nor would severing the low-mileage discount frustrate the legislative intent to tax motor vehicles for their use of Colorado's public highways. *See* § 42–3–101. Absent future legislative action, the effect of severing the low mileage discount for intrastate carriers is merely to make the interstate registration fee schedule applicable to *all* carriers with a GVW over 16,000 pounds, regardless of the number of miles traveled annually. *See* § 42–3–123(13)(b.3). Accordingly, we conclude that the low-mileage discount for intrastate carriers is severable from the remaining provisions of section 42–3–123(13)(b).

C

■ Cox also claims that sections 42–3–105 & –106, which provide, *inter alia,* specific ownership tax schedules for interstate and intrastate vehicles ten years old and older, constitute a facial violation of the Commerce Clause.[27] Once again, we agree.

The specific ownership tax in dispute is a property tax levied upon trucks and trailers and collected annually at the time of registration. The amount of tax payable on each vehicle depends upon its age, its assessed value and its tax "class." Colorado currently divides personal property subject to the specific ownership tax into several classes, with trucks, trailers and other motor vehicles falling within classes A, B and C. §§ 42–3–105(1)(a)–(c). Specific ownership tax rate schedules for those classes of property are provided in sections 42–3–106(2), (11), and (13).

In April 1990, the General Assembly amended section 42–3–105(1)(a) to include every truck and trailer used in Colorado "as an interstate carrier" within the category of Class A personal property.[28] *See* Ch. 301, sec. 4, § 42–3–105, 1990 Colo.Sess.Laws 1792, 1793 (House Bill 90–1148). That amendment did not affect, however, trucks and trailers operating solely within Colorado,

---

847, 25 L.Ed.2d 174 (1970) (Where facially neutral statute, having only incidental effects upon interstate commerce, is responsive to a legitimate local government purpose, it will be upheld "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.").

**27.** Cox apparently operated 11 vehicles in interstate commerce in 1989 which were ten years old or older. Riverton concedes that it does not have standing to raise this claim.

**28.** Section 42–3–105(1)(a), as amended, reads as follows:

(1) For the purpose of imposing graduated annual specific ownership taxes, the personal property specified in section 6 of article X of the State constitution, more particularly defined in section 42–1–102, is classified as follows:

(a) Every motor vehicle, truck, truck tractor, trailer, and semitrailer used in the business of transporting persons or property over any public highway in this State as an interstate commercial carrier, whether or not such business is engaged in by contract, for which an application is made for apportioned registration, regardless of base jurisdiction, shall be Class A personal property.

which continue to be classified, by default, as Class B personal property. § 42–3–105(1)(b) ("Every truck, truck trailer, and semitrailer used for the purpose of transporting property over any public highway in this state and not included in Class A shall be Class B personal property."). The effect of the amendment therefore was to provide a different specific ownership tax rate for interstate vehicles than that for intrastate vehicles.

For example, for Class A personal property the tax rates are those provided in section 42–3–106(2):

(2) The annual specific ownership tax payable on every item of Class A personal property shall be computed in accordance with the following schedule:

| Year of Service | Rate of tax |
| --- | --- |
| First year | 2.10% of taxable value |
| Second year | 1.50% of taxable value |
| Third year | 1.20% of taxable value |
| Fourth year | .90% of taxable value |
| Fifth, sixth, seventh, eighth, and ninth years | .45% of taxable value or ten dollars, whichever is greater |
| Tenth and each year later | Ten dollars |

(Emphasis added.) For Class B personal property, the rate of tax is identical to that provided for Class A property until the taxable property reaches its tenth year of service. § 42–3–106(11). At that point, the two rates diverge, with Class A property ten years old and older taxed annually at the rate of *ten dollars* per vehicle, while Class B property is taxed at the rate of *three dollars* per vehicle. *Compare* § 42–3–106(2) (Class A rates) *with* § 42–3–106(11) (Class B rates).

The State contends that this facial disparity in the specific ownership tax rates, like the low-mileage discount discussed above, does not discriminate against interstate commerce. Once again, the State's only argument to support its view is that the taxes paid by interstate carriers to Colorado are apportioned according to the percentage of miles driven in this State. Thus, the argument goes, there is no evidence that interstate carriers, as a group, are disadvantaged vis-à-vis intrastate carriers. For the reasons we stated in our discussion of the low-mileage discount provisions, we disagree.

First, the fact that the specific ownership tax payable on interstate vehicles is apportioned among the various jurisdictions in which those vehicles operate does not eliminate the facial discrimination apparent in

sections 42–3–105 and –106. For example, because Cox operates 95% of its miles in Colorado, it paid 95% of the Colorado specific ownership tax on its ten-year-old vehicles, that is, it paid $9.50 per vehicle to operate in Colorado in 1990. By contrast, all intrastate vehicles operated in Colorado which were ten years old or older were only charged $3.00 per vehicle in specific ownership taxes for 1990.

Second, as we mentioned above, Cox need not show that all interstate carriers, as a group, are unfairly treated vis-à-vis interstate carriers by this specific ownership taxing scheme in order to establish a Commerce Clause violation. *New Energy,* 486 U.S. at 276, 108 S.Ct. at 1809. Rather, Cox merely need show that the statute discriminates against interstate commerce by unfairly imposing an economic disadvantage upon interstate carriers, such as itself, which operate vehicles subject to the tax. Cox has met that burden in this case.

Finally, the State does not advance any justification "unrelated to economic protectionism" for the facial discrimination in sections 42–3–105 and –106. *See, e.g., New Energy,* 486 U.S. at 274, 278–80, 108 S.Ct. at 1810–11; *Maine v. Taylor,* 477 U.S. 131, 138, 151, 106 S.Ct. 2440, 2447, 2454, 91 L.Ed.2d

110 (1986) (State may validate a statute that discriminates against interstate commerce by showing a legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives); *Hughes v. Oklahoma,* 441 U.S. 322, 337, 99 S.Ct. 1727, 1737, 60 L.Ed.2d 250 (1979) ("[F]acial discrimination by itself may be a fatal defect" and "[a]t a minimum . . . invokes the strictest scrutiny."). According to the State, the "heart of the Colorado annual specific ownership tax scheme is the desire to raise revenues for governmental purposes." There is simply no evidence in the record to suggest, however, that there were no reasonable non-discriminatory alternatives available to the State through which it could achieve that purpose. *Cf. Taylor,* 477 U.S. at 148–52, 106 S.Ct. at 2452–54 (upholding Maine's facially discriminatory ban on imports of live baitfish after considering the state's asserted interest in protecting against potentially irreversible environmental damage and its lack of nondiscriminatory alternatives).

Accordingly, we conclude that the facial disparity in sections 42–3–105 and –106 between the tax rates applicable to interstate and intrastate vehicles ten years old and older violates the Commerce Clause.

■ Neither party contends that the discriminatory provisions of sections 42–3–105 and –106 cannot be severed from the constitutionally valid provisions which form the bulk of Colorado's specific ownership tax scheme. The invalid discrimination in tax rates is by no means "inextricably intertwined" with the valid provisions, and severing the disparity between interstate and intrastate vehicles would not frustrate the General Assembly's efforts to raise revenue for the maintenance of its roads and highways. For example, the General Assembly may

choose to eliminate the unconstitutional discrimination by raising the specific ownership tax rate applicable to intrastate vehicles ten years old and older.[29] Therefore, we conclude that the discriminatory provisions of sections 42–3–105 and –106 are severable from the remainder of those statutes.

Having resolved plaintiffs' constitutional claims, we must now address the question of damages.

## IV

The trial court awarded damages to Cox and Riverton in the amounts of $35,347.11 [30] and $18,024.15,[31] respectively, based on its determination that the State had committed three separate violations of the Commerce Clause. Because we have concluded that the trial court erred in finding the State's implementation of Senate Bill 159 in 1990 to be unconstitutional, we vacate those awards and remand to the trial court with directions to recalculate the damages in light of this opinion.

The trial court's award to Riverton of $18,024.15 "for Colorado's violations of the Commerce Clause with respect to unconstitutional registration fees" must be vacated in its entirety. The only Commerce Clause claim asserted by Riverton, and for which it had standing, was the claim that the State unconstitutionally applied Senate Bill 159 in 1990. Our conclusion that the State's application of Senate Bill 159 in 1990 did not violate the Commerce Clause precludes any award of damages to Riverton in this action. On remand, however, the trial court should determine the amount of damages, if any, to be awarded to Cox as a result of the State's enforcement in 1990 of the low-mileage discount and the specific ownership tax for vehi-

29. It could achieve this result either by amending section 42–3–105(a) to include intrastate carriers in the category of Class A personal property, or by amending section 42–3–106(11) to provide a tax rate of ten dollars per vehicle for Class B property ten years old and older.

30. The trial court amended its award of damages to Cox by subtracting $182 from the original amount to reflect the fact that it had erroneously

understood Cox to have operated thirty-seven trucks in 1990 which were ten years old or older, instead of only eleven.

31. The trial court deducted seven dollars from its original award of $18,031.15 to Riverton after Riverton notified the court that in fact it had not operated one vehicle over ten years old in 1990.

cles ten years old and older which we have found to be unconstitutional. Cox may not recover, however, the $33,270.80 in damages which the trial court awarded for "the increase in registration fees [Cox] paid from 1989 to 1990" because we have reversed the basis for this portion of the award. *See* Part III A of this opinion, *supra.*

## V

■ Finally, Cox cross-appeals the trial court's ruling denying its request for attorney fees as a "prevailing party" pursuant to 42 U.S.C. sections 1983 and 1988.[32] Cox claims that the trial court's ruling was premised upon its misinterpretation of the United States Supreme Court's decision in *Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). We agree.

■ In order to state a claim for relief under 42 U.S.C. section 1983, a plaintiff must allege: (1) that he or she was deprived of a federal right and (2) that such deprivation was effected by one acting under color of State law. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Dillingham v. University of Colo. Bd. of Regents,* 790 P.2d 851, 854 (Colo.App.1989). In this case, Cox alleged in its second amended complaint that the State violated the Commerce Clause in several distinct ways. Cox also stated that such violations were effected by officials of the Department of Revenue who were acting under color of State law, and, therefore, Cox was entitled to its attorney fees pursuant to 42 U.S.C. section 1988.[33] Both Cox and the State moved for summary

judgment as to Cox's 1983 claim and jointly stipulated that no genuine issues of material fact were in dispute.

The trial court agreed that no issue of fact existed to preclude entering summary judgment and granted the State's motion for summary judgment, based on its determination that Cox's complaint failed to plead correctly its 1983 claim. More specifically, the trial court, relying upon the *Dennis* decision, determined that Cox was not entitled to relief under section 1983 because it allegedly failed to specify in its complaint that the source of the *federal right* in question was the Commerce Clause, while the source of the *remedy* was section 1983.[34] *Dennis* does not create, however, such a narrow, technical pleading requirement for section 1983 claims. Rather, the holding in *Dennis* is quite simple: the Commerce Clause confers "rights, privileges or immunities" within the meaning of section 1983. 498 U.S. at 446, 111 S.Ct. at 870.

In light of its conclusion that the State violated the Commerce Clause in this case, thereby depriving Cox of his federal "rights" for purposes of section 1983, the trial court erred in granting the State's motion. Indeed, the trial court should have granted Cox's motion for summary judgment, as Cox's motion established that its federal rights were violated under color of State law. Since Cox has prevailed on two of its constitutional claims in this court, the trial court's error was not harmless.

Therefore, we reverse the trial court's order granting the State's summary judgment motion as to Cox's section 1983 claim and

32. Because Riverton did not prevail on its sole constitutional claim, we need not address the trial court's denial of its request for attorney fees under section 1988.

33. Section 1988 provides that:
In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
42 U.S.C. § 1988 (1988).

34. Apparently, the trial court was under the impression that because the opinion in *Dennis* men-

tioned in its recitation of the facts that the plaintiff in that case alleged that the State of Nebraska was "liable under 42 U.S.C. § 1983," 498 U.S. at 441, 111 S.Ct. at 867, the Supreme Court intended to require that all plaintiffs specify that the source of the remedy was section 1983 and not the federal right of which the plaintiff was deprived (e.g., the Commerce Clause). Even if such a proposition were true, Cox's second amended complaint appears to satisfy this requirement.

remand this claim to the trial court for further consideration. On remand, the trial court must decide, in its discretion, whether to award Cox, as the "prevailing party" under section 1988 on two of its Commerce Clause claims, its reasonable attorney fees incurred in pursuing those specific claims.

## VI

In summary, we reverse the trial court's ruling finding the State's implementation in 1990 of sections 42–3–123(13)(b) and (b.3) unconstitutional, because the State's implementation efforts, viewed as a whole, did not discriminate against interstate commerce. We agree with the trial court, however, that the low-mileage discount for intrastate vehicles in section 42–3–123(13)(b) is facially discriminatory and must be severed from the remainder of the statute. We also agree with the trial court's determination that sections 42–3–105 and –106 facially discriminate against interstate commerce by imposing a higher specific ownership tax rate upon in-

terstate vehicles ten years old and older than the rate imposed upon same-aged vehicles which operate solely within Colorado. Finally, we reverse the trial court's order granting the State's motion for summary judgment as to Cox's section 1983 claim and remand the case to the trial court to address Cox's claim for attorney fees pursuant to 42 U.S.C. section 1988. We vacate the trial court's order granting damages to Riverton and direct the trial court to modify its order granting damages to Cox in a manner consistent with this opinion.