In re BURLINGTON MOTOR HOLDINGS INC., Burlington Motor Carriers Inc., Spirit Transportation Inc., BNMC Real Estate Inc., and BMC Equipment Inc., Debtors.

Burlington Motor Carriers
Inc., Plaintiff,

v.

Indiana Department of Revenue, Alabama Department of Revenue, Arizona Department of Transportation, Arkansas Department of Finance and Administration, California Department of Motor Vehicles, Colorado Department of Revenue, Connecticut Department of Motor Vehicles, Delaware Division of Motor Vehicles, Florida Department of Highway Safety and Motor Vehicles, Georgia Department of Revenue, Idaho Transportation Department, Illinois Secretary of State—Vehicle Services Department, Iowa Department of Transportation, Kansas Department of Revenue, Kentucky Transportation Cabinet, Louisiana Department of Public Safety & Corrections, Maine Bureau of Motor Vehicles, Maryland Motor Vehicle Administration, Massachusetts Registry of Motor Vehicles, Michigan Department of State, Minnesota Department of Public Safety, Mississippi State Tax Commission, Missouri Highway Reciprocity Commission—Missouri Department of Revenue, Montana Department of Transportation, Nebraska Department of Motor Vehicles, Nevada Registration Division—Department of Motor Vehicles and Public Safety, New Hampshire Department of Safety, New Jersey Department of Motor Vehicles, New Mexico Motor Vehicle Division Taxation and Revenue Department, New York Department of Motor Vehicles, North Carolina Department of Transportation, North Dakota Department of Transportation, Ohio Bureau of Motor of Motor Vehicles, Oklahoma Tax Commission, Oregon Department of Transportation, Pennsylvania Bureau of Motor Vehicles, Rhode Island Division of Motor Vehicles, South Carolina Department of Revenue, South Dakota Department of Revenue, Tennessee Department of Revenue, Texas Department of Transportation, Utah State Tax Commission, Vermont Agency of Transportation, Virginia Department of Motor Vehicles, Washington Department of Licensing, West Virginia Division of Motor Vehicles, Wisconsin Department of Transportation and Wyoming Department of Transportation, Defendants.

Bankruptcy Nos. 95–1559 to 95–1563.
Adversary No. 98–155.

United States Bankruptcy Court,
D. Delaware.

July 9, 1999.

Karen C. Bifferato, Esquire, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

Tobey M. Daluz, Esquire, Reed Smith Shaw & McClay, LLP, Philadelphia, PA.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The matter before the court is an adversary complaint in three counts filed by the Successor Corporation [2] to the Debtors against the above named defendants. Count I seeks declaratory relief in the form of an Order declaring that alleged overpayments by Debtors of registration and licensing fees postpetition pursuant to the International Registration Plan ("IRP") are not an administrative expense of Debtors' estates. Count II seeks to avoid the payments as unauthorized postpetition transfers under the Bankruptcy Code pursuant to 11 U.S.C. § 549. Count III seeks a determination of tax liability

---

1. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. Under the Fourth Amended Joint Plan of Reorganization, confirmed by the court on or about November 22, 1996, substantially all assets of Debtors' estates were sold to the

Successor Corporation pursuant to an Asset Purchase Agreement. Under the plan, the Successor Corporation assumed all administrative debts. The assets sold included all causes of action inuring to Debtors' benefit. Complaint at ¶¶ 3, 4.

744

under § 505 of the Bankruptcy Code with respect to a refund of the IRP fee. The Successor Corporation's Brief in Support of Response to Motion to Dismiss Filed by Various State Agencies Based on Eleventh Amendment [3] Immunity, Docket No. 118, states that 33 of 48 states have moved for dismissal based on Eleventh Amendment sovereign immunity. These states are Indiana, Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Iowa, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, West Virginia, Wisconsin, and Wyoming. Of the 33 states which have moved to dismiss, 19 filed proofs of claim by the time the Successor Corporation's brief at Docket No. 118.

Fifteen states had not moved to dismiss at the time the Successor Corporations's brief was filed at Docket Number 118. Those states are Florida, Kansas, Kentucky, Louisiana, Maryland, Montana, Nebraska, New Mexico, North Dakota, Ohio, Rhode Island, South Dakota, Utah, Vermont, and Washington. Of the 15 states that have not moved to dismiss, six filed proofs of claim.

Altogether, 25 states filed proofs of claim. Those states are: Indiana, Alabama, Arizona, California, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Carolina, North Dakota,

Pennsylvania, Rhode Island, Tennessee, Texas and West Virginia. Plaintiff's Brief, Docket No. 118, at 2–3, nn. 2–3, 5.

The states that have moved to dismiss the Complaint have done so on the ground that sovereign immunity bars suit against them in this court. The Successor Corporation has agreed to dismissal of the Complaint against those states which have moved to dismiss and have not filed a proof of claim. For the reasons which follow, the Complaint will be dismissed as to all states.

The material facts are not in dispute. In considering a motion to dismiss, we must take the facts in the light most favorable to the Successor Corporation as the non-moving party. Under the IRP, the state in which a motor carrier's primary headquarters are located bills, collects and pays to all taxing authorities of other states all IRP fees. The IRP fees are apportioned based on actual miles traveled by the motor carrier in each jurisdiction during the preceding registration year (April through March).[4] Complaint at ¶ 12. *See also Riverton Produce Co. v. State of Colorado*, 871 P.2d 1213, 1217, n. 6 (Colo.1994), citing *American Trucking Assns., Inc. v. Scheiner*, 483 U.S. 266, 271–73, 107 S.Ct. 2829, 2834, 97 L.Ed.2d 226 (1987). The "International Registration Plan" is defined in 49 U.S.C. § 31701(4) as "the interstate agreement on apportioning vehicle registration fees paid by motor carriers, developed by the American Association of Motor Vehicle Administrators".[5]

3. The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

4. The Code of Federal Regulations currently provides that the registration year is the calendar year and carriers must file their annual registration applications between August 1 and November 30 of the preceding year. 49 C.F.R. § 367.4(b)(1), (2).

5. Under § 31704, states not participating in the IRP may not "establish, maintain, or enforce a commercial motor vehicle registration law, regulation, or agreement that limits the operation in that State of a commercial motor vehicle that is not registered under the laws of the State, if the vehicle is registered under the laws of a State participating in the Plan." Under § 31707 a state is not limited in the amount it can charge for commercial motor vehicle registration under § 31704 or in the amount it can charge for fuel use tax. *See* § 31705.

Debtors, after this case was commenced, and Indiana on behalf of itself and other states' taxing authorities, entered into a letter agreement dated February 16, 1996, regarding the payment of IRP fees for 1996. *See* Letter of February 16, 1996, from Burlington Motor Carriers to James Poe, Director, Indiana Department of Revenue, Exhibit to Complaint ("letter agreement"). Debtors paid IRP fees of $2,588,106.39 in eleven monthly installments pursuant to the agreement based on the renewal of license registrations for approximately 2,442 tractors operated by Debtors nationwide.[6] Before the end of the first quarter of the 1996 registration year, Debtors ceased using "at least 600 license plates." Complaint at ¶ 12.

In July of 1996 Debtors approached Indiana seeking a reduction in the IRP fee attributable to these 600 tractors.[7] Debtors estimated the reduction to be $547,380. Indiana refused to reduce the payments based on Debtors' estimate. Instead, Indiana required full payment and insisted that Debtors seek reimbursement of any overpayment. Because it has requested reimbursement from Indiana and has not received a decision, the Successor Corporation brought this adversary proceeding.

In Count I the Successor Corporation seeks an order that the alleged overpayments [8] are not an administrative expense of the estates under § 503(b)(1) because the IRP fee incurred for plates taken out of service, and, therefore, not used, was not "incurred" within the meaning of § 503(b)(1)(B) and the estates were not benefitted by the IRP fee paid for those plates. That section provides that

> After notice and a hearing, there shall be allowed administrative expenses ... including—
>
> ...
>
> (B) any tax
>
> (i) incurred by the estate ...

▮ In order to qualify as an administrative tax under § 503(b)(1)(B), the charge must first be a tax. Black's Law Dictionary describes taxes, in the general use of the term, as

> A charge by the government on the income .... A pecuniary burden laid upon individuals or property to support the government .... Essential characteristics of a tax are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority.... any contribution imposed by government upon individuals, for the use and service of the state .... And in its essential characteristics is not a debt.... Taxes ... [are] intended to insure uniformity of contribution, and a just apportionment of the burdens of government.

BLACK'S LAW DICTIONARY 1457–58 (6th ed.1990). A fee, on the other hand, is "[a] charge fixed by law for ... use of a privilege under control of government." *Id.* at 614. The distinction between fees and taxes is not always easy to discern. The Court of Appeals for the Tenth Circuit uses a functional analysis to determine whether a charge constitutes a tax, considering four factors. *See In re Bayly Corp.,*

---

**6.** According to the letter agreement, "Certain States and Canadian Provinces shall receive immediate payment of the entire amount of their respective 1996 IRP Fees."

**7.** The Complaint, at pages 8–9, lists Debtors' estimated overpayments to each of the states. The amount was based on the annual cost of license plate renewals ($1,216.40) pro-rated over four quarters ($304.10 per quarter). The estimated fee of $912.30 for the remaining three quarters was multiplied by the 600 license plates. Complaint at ¶ 13.

**8.** There is a significant issue as to whether there was any "overpayment" at all based upon the IRP's method of calculation of the required payments, which is to assess the fee on the actual miles traveled in each jurisdiction during the preceding year per license plate put in service at the beginning of the current year. *See* 49 C.F.R. § 367.4(b)(3)("no prorating of fees to account for partial year operations").

163 F.3d 1205 (10th Cir.1998). The factors are whether the payments are (1) an involuntary pecuniary burden; (2) imposed by or under legislative authority; (3) for public purposes including that of defraying governmental expenses or undertakings authorized by a government; and (4) imposed under the state's police or taxing power.

 Under this analysis, the IRP fee in the matter before us is not a tax. First, the IRP fee arises from the "interstate agreement on apportioning vehicle registration fees paid by motor carriers" which was developed by the American Association of Motor Vehicle Administrators. *See* 49 U.S.C. § 31701(4). Second, although the Code of Federal Regulations contains mandatory provisions concerning registration, only those motor carriers operating under a certificate or permit issued by the Secretary of Transportation pursuant to 49 U.S.C. § 13902 must adhere to the registration requirements in 49 C.F.R. § 367.4. *See* 49 C.F.R. §§ 367.3, 367.4(a). The purpose of the IRP is to facilitate registration in one jurisdiction for entities such as Debtors and the Successor Corporation which have commercial motor vehicles traveling through multiple states. The effect is to avoid the need to register and pay a license fee in every state. We find that the IRP fee is required to be paid and that it is not a tax for purposes of 11 U.S.C. § 503(b)(1)(B).

Section 503(b)(1)(B) is not the end of our analysis, however. We also look to § 503(b)(1)(A) which provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate." The IRP fee was a necessary cost of Debtors' interstate trucking business and was paid in the ordinary course

of that business. Pursuant to the letter agreement of February 16, 1996, Debtors were to pay the IRP fees in 11 monthly installments to Indiana which disbursed to other states. The payments to the other states were to be pro-rated among them in accordance with their respective percentage share of the fee. *See* letter agreement. The letter agreement also stated that the creditors' committee approved of the arrangement and that the bankruptcy court would be advised of the agreement at a hearing scheduled for February 22, 1996.[9] The docket of the bankruptcy case does not show that a hearing was held on that date or that any motion was filed or order entered concerning this agreement. The fact that no prior court approval was sought and no challenge to the propriety of payment was made at the time indicates that payment of the fee was considered an ordinary course of business expense by all parties in interest. In addition, the Code of Federal Regulations provides that motor carriers who are required to register and pay filing fees must select "a single participating State as its registration State." 49 C.F.R. § 367.3.[10] Debtors complied.

 Because Debtors were required to register and pay the fees under the IRP in order to conduct their interstate trucking business, we conclude that the payment of the IRP fee was an ordinary course of business expense for Debtors that was an actual and necessary cost of business and, therefore, an administrative expense. Accordingly, we cannot agree with the Successor Corporation's analysis that the IRP fee was not an administrative expense and Count I will be dismissed as to all defendants.

9. The letter agreement provided that "... the Company intends to inform the Bankruptcy Court presiding over its chapter 11 cases of this agreement at the next hearing ... The Company also intends to include a reference to the payment plan in its next monthly operating report to be filed with the Bankruptcy Court and served upon the United States

Trustee and the Creditors' Committee ...." Exhibit to Complaint.

10. Only those motor carriers holding a certificate or permit from the Secretary of Transportation issued pursuant to 49 U.S.C. § 13902 are bound by the regulations. 49 C.F.R. § 367.4(a).

■ In Count II, the Successor Corporation alleges that payment of the IRP fee is an avoidable unauthorized postpetition transfer under 11 U.S.C. § 549 and § 550 because the fee was not an administrative expense. Under § 549 transfers that are not in the ordinary course of business are avoidable and ordinary course transfers are implicitly authorized. *See In re Molded Acoustical Products, Inc.*, 150 B.R. 608, 615, n. 4 (E.D.Pa.1993), *aff'd* 18 F.3d 217 (3d Cir.1994)(court recognized that ordinary course of business defense could be raised to a § 549 claim). Based on our conclusion that the IRP fee was an expense incurred in the ordinary course of business entitled to administrative expense status, we find that it is not an avoidable unauthorized postpetition transfer. Therefore, Count II will be dismissed as to all defendants.

■ In Count III of the Complaint, the Successor Corporation alleges that Debtors "submitted a proper request for a refund of the 1996 IRP Fee overpayment attributable to Indiana" but have not received a refund. The Successor Corporation therefore seeks a determination of its liability to Indiana under § 505 of the Bankruptcy Code. Section 505(a) permits the bankruptcy court to "determine the amount or legality of any tax" unless it was previously contested and adjudicated, whether or not the tax was previously assessed or paid. Inasmuch as the IRP fee is not a tax, § 505 does not apply. Count III will therefore be dismissed as to all defendants.

We also note that the Code of Federal Regulations provides that "[t]here will be no prorating of fees to account for partial year operations." 49 C.F.R. § 367.4(b)(3). Thus, it appears that the Successor Corporation may not be entitled to a reduction or reimbursement of the IRP fee paid under federal law. Moreover, the New Jersey IRP Administrative Code § 13:18–2.7 expressly bars refund of IRP fees. No other party has provided us with information on individual states' laws in this regard but independent research of some of those statutes developed references to refunds under various conditions. A few examples follow.

Pennsylvania law provides that the Secretary of Revenue may enter into agreements with other states which "may provide for ... issuance of refunds or credits." 75 Pa.Cons.Stat.Ann. § 9622. Arkansas law provides that the Director of the Department of Finance and Administration "is authorized to refund a proportionate part of the registration fees ... under" certain conditions, including discontinuance of operations in the state, destruction of the vehicle, or a change in operations in the state such that registration is not required. Arkansas Code § 27–14–504. There are references in other states' laws to refunds but whether Debtors would be entitled to a refund in those states is not apparent nor is the method for establishing entitlement to a refund. *See* Indiana Code § 9–18–2–16; Kansas Code § 8–1,101(c); Michigan Code § 257.801b.

■ Notwithstanding the foregoing, the Successor Corporation has not alleged or established the applicability of any state's refund provisions. The Successor Corporation has failed to state a claim in the Complaint upon which relief can be granted. The Complaint will be dismissed.

The states have raised sovereign immunity as a defense to this adversary action. However, because we have addressed the merits of the counts of the Complaint, we do not need to reach this issue.[11]

---

11. We note an article by Ned W. Waxman and David C. Christian, *Seminole Tribe Constitu-* *tionally Flawed*, 33 BCD Issue 20, Weekly News and Comment at 5 (Feb. 3, 1999).

Waxman and Christian make the argument that in the Constitution the states gave Congress the exclusive power to enact bankruptcy laws and ceded sovereignty in this regard. Accordingly, *Seminole,* which concerned the Indian Commerce Clause of Article I of the United States Constitution and abrogation of Eleventh Amendment immunity, would not apply in the bankruptcy context. Waxman and Christian also advocate the overruling of *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), which held that states are immune from suits by their own citizens, despite the plain language of the Eleventh Amendment. *See* note 3, *supra.*

Case law in this circuit holds that 11 U.S.C. § 106(a) providing for abrogation of sovereign immunity is unconstitutional. *In re Sacred Heart Hospital of Norristown,* 133 F.3d 237 (3d Cir.1998). There is a split of authority with respect to the constitutionality of § 106(b). *See In re Straight,* 143 F.3d 1387 (10th Cir.), *cert. denied* —— U.S. ——, 119 S.Ct. 446, 142 L.Ed.2d 400 (1998)(§ 106(b) does not abrogate the sovereign immunity of a state but codifies the existing principle expressed in *Gardner v. State of New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), *reh. denied* 330 U.S. 853, 67 S.Ct. 768, 91 L.Ed. 1296 (1947), that filing a claim waives sovereign immunity); *In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d 1140, 1147 (4th Cir.1997), *cert. denied sub nom. Schlossberg v. Maryland Comptroller of Treasury,* —— U.S. ——, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998)(the language of § 106(b) "amounts to language of abrogation"). There also is a split of authority concerning § 106(c) which provides that "there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate". *See In re Koehler,* 204 B.R. 210, 219 (Bankr.D.Minn.1997)("[i]nsofar as § 106(c) allows for the offset of claims which do not arise out of the same transaction or occurrence ... it too may be subject to constitutional challenge"). *But see In re Charter Oak Associates,* 203 B.R. 17 (Bankr.D.Conn. 1996)(court held that it had jurisdiction under § 106(c) to determine whether the debtor's claim against the state Department of Social Services may be set off against the proof of claim filed by the Department of Revenue Services). *Cf. In re William Ross, Inc.,* 199 B.R. 551 (Bankr.W.D.Pa.1996)(although finding that § 106 did not apply to the facts of the matter before it, the court found that interagency offset was not permitted under § 106(c) or § 553). *See also In re NVR L.P.,* 206 B.R. 831, 839 (Bankr.E.D.Va.1997), *aff'd sub nom. Clerk of Circuit Court for Anne Arundel County v. NVR Homes, Inc.,* 222 B.R. 514 (E.D.Va.1998)("insofar as Congress undertook in revised §§ 106(b) and (c) to displace or to modify the meaning ascribed to the Eleventh Amendment by the courts, its endeavor must be deemed an attempted abrogation of the states' constitutional immunity... revised §§ 106(b) and (c) must fall with revised § 106(a)" because, although "Congress may 'abrogate', only a state may 'waive' its Eleventh Amendment immunity").