**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-20018
Summary Calendar

ABOLALA SOUDAVAR; SAADI SOUDAVAR
Plaintiffs - Appellants

VERSUS

ISLAMIC REPUBLIC OF IRAN; MINISTRY OF INDUSTRY; MINES OF
IRAN; SAZMANE GOSTARESH VA NOWSAZ-E IRAN
Defendants - Appellees

Appeal from the United States District Court
For the Southern District of Texas
September 7, 1999

Before DAVIS, DUHÉ, and BENAVIDES, Circuit Judges

DUHÉ, Circuit Judge:

## BACKGROUND

Abolala Soudavar and Saadi Soudavar ("Plaintiffs") were substantial shareholders in the Khawar Industrial Group ("KIG"), one of the largest industrial enterprises in Iran and a licensee of Mercedes-Benz. In 1979, Iran expropriated the Plaintiffs' property and nationalized KIG. Although the law instituting the nationalization made certain provisions for the compensation of KIG's shareholders, the Plaintiffs were never paid.

After the expropriation, the Plaintiffs moved to the United

States and Saadi Soudavar has become a United States citizen. In 1991, Iran organized a gathering in New York aimed at persuading Iranian businessmen to return home. At that meeting the Plaintiffs asked Iranian officials about the status of their property, and were told to return home if they wanted it back. In 1992, Iran adopted a resolution to compensate parties whose property had been expropriated. Under the resolution, eligible shareholders could elect to receive up to two thirds of the shares previously owned, minus a number of fees. The Plaintiffs elected not to accept this offer. The Plaintiffs allege that Iran later blacklisted them from this offer.

In 1998, the Plaintiffs sued Iran, the Ministry of Industry and Mines, and Sazmane Gostaresh Va Nosaz-e-Iran (Department of Expansion and New Development of Iran) (collectively "Iran"). Iran moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and, alternatively, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The district court granted Iran's Rule 12(b)(6) motion and dismissed the case without prejudice but did not address Iran's Rule 12(b)(1) motion. The Plaintiffs appeal.

## DISCUSSION

Citing the Foreign Sovereign Immunities Act ("FSIA") and the Treaty of Amity, the Plaintiffs argue that the district erred by dismissing their suit. For the following reasons, we vacate the

2

district court's dismissal for failure to state a claim and dismiss the suit for lack of subject matter jurisdiction.

I.   Foreign Sovereign Immunities Act

Generally, foreign sovereigns are "immune from jurisdiction of the courts of the United States."  28 U.S.C.A. § 1604 (West 1994). "Under the FSIA, a court in the United States can exercise subject matter jurisdiction over a foreign sovereign only if an exception to sovereign immunity applies."  Stena Rederi AB v. Comision de Contratos, 923 F.2d 380, 386 (5th Cir. 1991); 28 U.S.C.A. § 1605 (West 1994 & Supp. 1999) (listing exceptions to immunity).  In this case, the Plaintiffs rely on the commercial activities exception to sovereign immunity.  See § 1605(a)(2).[1]

In determining whether the commercial activity exception applies, we ask three questions:  (1) "whether the particular conduct giving rise to the claim in question constitutes or is in connection with commercial activity;" (2) whether the relevant activity is sovereign or commercial; and (3) whether the commercial activity has the requisite jurisdictional nexus with the United States.  De Sanchez v. Banco Central de Nicaragua, 770 F.2d 1385, 1391 (5th Cir. 1985).  In the instant case, the district court answered the second question, concluding that the acts complained of were sovereign rather than commercial.  In Siderman de Blake v.

---

[1]The Defendant argues that the takings in violation of international law exception is also inapplicable.  See 28 U.S.C.A. § 1605(a)(3).  The Plaintiffs do not rely on this exception and, thus, we need not address it.

<u>Republic of Argentina</u>, 965 F.2d 699, 708-09 (9th Cir. 1992), the Ninth Circuit reached a different conclusion in a case with similar facts. In that case, Argentina expropriated the plaintiffs' hotel and retained the profits from its continued operation. The Ninth Circuit characterized Argentina's continuing management of the hotel as commercial, reasoning that Argentina's activities were "of a kind in which a private party might engage." <u>Id.</u> In this case, the acts complained of, whether sovereign or commercial, lack the requisite jurisdictional nexus with the United States. Therefore, we need not decide whether the acts were sovereign or commercial.

The FSIA lists three types of acts which have the requisite jurisdictional nexus with the United States:

> [1] a commercial activity carried on in the United States by the foreign state; . . . [2] an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; . . . [3] an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C.A. § 1605(a)(2).

First, the Plaintiffs argue that by meeting with Abolala Soudavar in New York in 1991, Iran carried on commercial activity in the United States. We disagree. "Under the FSIA, commercial activity carried on in the United States must have 'substantial contact with the United States.'" <u>Stena</u>, 923 F.2d at 389 n.11 (quoting 28 U.S.C.A. § 1603(e) (West 1994)). In <u>Stena</u>, we concluded that a single visit to Texas by a representative of a nationalized Mexican petroleum company did not constitute

4

substantial contact with the United States.  See id.  Similarly, the Iranian representative's visit to New York did not constitute substantial contact with the United States.

Second, the Plaintiffs maintain that jurisdiction is proper because the New York meeting constituted an "act performed in the United States in connection with a commercial activity of [Iran] elsewhere."  28 U.S.C.A. § 1605(a)(2).  This argument fails because the Plaintiffs' causes of action are not based on representations made at the meeting.  See Stena, 923 F.2d at 388 (stating that "[u]nder the plain language of the FSIA, the plaintiff's action must be based upon the act performed in the United States.").  The meeting was designed to persuade Iranian businessmen to return to Iran.  When the parties discussed compensation for the KIG shares, the Iranian representative told Abolala Soudavar to return to Iran if he wanted his company back.  This statement is not the basis of the Plaintiffs' suit.  It is clear from the complaint that the Plaintiffs' suit is based on Iran's refusal to follow its own law calling for remuneration for expropriating the Plaintiffs' property.

Third, the Plaintiffs' contend that we have jurisdiction over this matter because Iran's refusal to pay for the expropriated shares caused direct effects in the United States--lost income and lost tax revenue.  We disagree.  "[A]n effect is direct if it follows as an immediate consequence of the defendant's activity." Republic of Argentina v. Weltover, 112 S.Ct. 2160, 2168 (1992).  At

5

the time of the expropriation, the Plaintiffs lived in Iran and their property was in Iran. Hence, the financial loss, occurred in Iran. The fact that the Plaintiffs have since become United States residents does not alter this analysis.[2]

II. The Treaty of Amity

The Plaintiffs also argue that we have jurisdiction over this cased based on the Treat of Amity. Treaty of Amity, Economic Relations and Consular Rights between the United States and Iran, 8 U.S.T. 899. We disagree. The limited waiver of immunity in the Treaty of Amity "extends only to enterprises of Iran, not Iran itself." Berkovitz v. Islamic Republic of Iran, 735 F.2d 329, 333 (9th Cir. 1984); see Formost-McKesson v. Islamic Republic of Iran, 905 F.2d 438, 452 (D.C. Cir. 1990).

## CONCLUSION

We vacate the district court's dismissal and dismiss the case for lack of subject matter jurisdiction.

VACATED; DISMISSED.

---

[2]The Plaintiffs argue that, as shareholders in KIG, Iranian law required that they be notified at their United States addresses by registered mail about share-related decisions. Relying on dicta from a Ninth Circuit case, they argue that the mailing requirement provides the direct effect in the United States. See Siderman de Blake, 965 F.2d at 711. We find the Ninth Circuit's dicta unpersuasive.

6