In re BURLINGTON MOTOR HOLD-
INGS INC., Burlington Motor Carri-
ers Inc., Spirit Transportation Inc.,
BNMC Real Estate Inc., and BMC
Equipment Inc., Debtors.

Burlington Motor Carriers
Inc., Plaintiffs,

v.

Indiana Department of Revenue, Ala-
bama Department of Revenue, Ari-
zona Department of Transportation,
Arkansas Department of Finance and
Administration, California Depart-
ment of Motor Vehicles, Colorado De-
partment of Revenue, Connecticut De-
partment of Motor Vehicles, Delaware
Division of Motor Vehicles, Florida
Department of Highway Safety and
Motor Vehicles, Georgia Department
of Revenue, Idaho Transportation De-
partment, Illinois Secretary of State—
Vehicle Services Department, Iowa
Department of Transportation, Kan-
sas Department of Revenue, Kentucky
Transportation Cabinet, Louisiana
Department of Public Safety & Cor-
rections, Maine Bureau of Motor Ve-
hicles, Maryland Motor Vehicle Ad-
ministration, Massachusetts Registry
of Motor Vehicles, Michigan Depart-
ment of State, Minnesota Department
of Public Safety, Mississippi State Tax
Commission, Missouri Highway Reci-
procity Commission—Missouri De-
partment of Revenue, Montana De-
partment of Transportation, Nebraska
Department of Motor Vehicles, Neva-
da Registration Division—Department
of Motor Vehicles and Public Safety,
New Hampshire Department of Safe-
ty, New Jersey Department of Motor
Vehicles, New Mexico Motor Vehicle
Division Taxation and Revenue De-
partment, New York Department of
Motor Vehicles, North Carolina De-
partment of Transportation, North
Dakota Department of Transporta-
tion, Ohio Bureau of Motor of Motor

Vehicles, Oklahoma Tax Commission,
Oregon Department of Transporta-
tion, Pennsylvania Bureau of Motor
Vehicles, Rhode Island Division of
Motor Vehicles, South Carolina De-
partment of Revenue, South Dakota
Department of Revenue, Tennessee
Department of Revenue, Texas De-
partment of Transportation, Utah
State Tax Commission, Vermont
Agency of Transportation, Virginia
Department of Motor Vehicles, Wash-
ington Department of Licensing, West
Virginia Division of Motor Vehicles,
Wisconsin Department of Transporta-
tion and Wyoming Department of
Transportation, Defendants.

Bankruptcy Nos. 95–1559 to 95–1563.
Adversary No. 98–155.

United States Bankruptcy Court,
D. Delaware.

Dec. 8, 1999.

Karen C. Bifferato, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

Tobey M. Daluz, Reed Smith Shaw & McClay LLP, Philadelphia, PA.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

Before the court is the "Successor Corporation's Motion for Reconsideration of Order Dismissing Adversary Complaint". In its adversary complaint the Successor Corporation sought a refund of alleged overpayments of registration and licensing fees made postpetition by Debtors pursuant to the International Registration Plan ("IRP"). The Successor Corporation challenged the overpayments as avoidable postpetition preferences. It now asks us to reconsider our dismissal of the complaint by Memorandum Opinion and Order dated July 9, 1999 (235 B.R. 741 (Bankr. D.Del.1999)), which was based, *inter alia,* on the ground that the alleged overpayment of the IRP fee was an ordinary course of business expense and an administrative expense of the estate.[2]

■ The Successor Corporation cites *Harsco Corp. v. Zlotnicki,* 779 F.2d 906 (3d Cir.1985), *cert. denied* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986), for the proposition that a motion for reconsideration is to correct manifest errors of fact. It asserts that we erred in not considering the fact that the alleged overpayment of the IRP fee failed to benefit the estate and, therefore, cannot be an administrative expense.[3] The California DMV

1. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. The Memorandum Opinion and Order of July 9, 1999, dismissed other counts as well. The Successor Corporation has not asked for reconsideration of our rulings on the other counts.

3. The Successor Corporation filed its motion under Fed.R.Civ.P. 59(e) which provides that a motion to alter or amend a judgment shall be served no more than ten days after the judgment is entered. Fed.R.Civ.P. 59 is made applicable to bankruptcy cases by Fed. R.Bankr.P. 9023, except as provided in Fed. R.Bankr.P. 3008. Rule 3008 provides that a

responded to the effect that the estate was benefitted. However, the Successor Corporation does not dispute that Debtors had to pay the IRP fee to operate and that operation was essential to reorganization. We find that Debtors could not have operated lawfully postpetition without paying the IRP fee and, inasmuch as the fee permitted operations, the estate was benefitted by payment of the fee. Moreover, we have been pointed to no authority establishing entitlement to a refund of these fees under either state or federal law, and our own examination with respect to the July 1999 decision indicates that the Successor Corporation would not qualify for a refund under the state laws we reviewed.[4] The Motion for Reconsideration is denied with respect to this ground.

The Successor Corporation also asks that "[i]f necessary, . . . this Court decide the sovereign immunity issue on the current briefs." Motion for Reconsideration at ¶ 10. In an unsigned Joint Response to the Motion for Reconsideration, filed on behalf of approximately 20 states, and separate responses filed on behalf of the Virginia DMV and the New Jersey DMV,[5] the states argue that we must decide the "jurisdictional issue" of sovereign immunity and cannot address the merits of the Complaint as we did. It is apparently the states' position that sovereign immunity goes to this court's subject matter jurisdiction and, because they assert sovereign immunity, we have no jurisdiction to adjudicate the matter. Although the states did not file motions for reconsideration, their responses to the Successor Corporation's motion raise the issue of subject matter jurisdiction. Because a court must always examine its own subject matter jurisdiction, we address the issue. *See generally, Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 201 (3d Cir.1993); *Atlantic City Mun. Utilities Authority v. Regional Adm'r*, 803 F.2d 96, 103 (3d Cir.1986).

■ For the reasons which follow, we find that sovereign immunity is not a matter of subject matter jurisdiction. Subject matter jurisdiction cannot be waived nor may it be conferred by agreement. Sovereign immunity, on the other hand, can be waived. Sovereign immunity is referred to as an affirmative defense in many Supreme Court decisions, although, except for *Gardner v. State of New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), *reh. denied* 330 U.S. 853, 67 S.Ct. 768, 91 L.Ed. 1296 (1947), none that we examined are bankruptcy cases.[6] *See also Ford Motor Co. v. Dept. of Treasury of State of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (state's immunity from suit may be waived); citing *State of Missouri v. Fiske*, 290 U.S. 18, 24, 54 S.Ct. 18, 78 L.Ed. 145 (1933); *Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477 (1906); *Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883).[7] *See also Alden v.*

party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate.

4. The fee was paid to Indiana which distributed payment to other states. The Successor Corporation requested a refund from Indiana. *See* Memorandum Opinion of July 9, 1999. The record does not indicate that Indiana has responded to the request for a refund.

5. The California DMV filed a response in support of the conclusion that the estate benefitted by paying the IRP fee.

6. In *Gardner* the trustee and others objected to tax claims filed by the state. The Court held if a state files a claim in a bankruptcy case it waives any immunity to which it might otherwise be entitled. The Court noted that the claims objection process does not involve a suit against a state and no judgment is sought against the state, even though the state's claim might be affected.

7. The Supreme Court quoted *Clark*, 108 U.S. at 447, 2 S.Ct. at 883, in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 119 S.Ct. 2219, 2225, 144 L.Ed.2d 605 (1999), saying that it has "long recognized that a State's sovereign immunity is 'a personal privilege which it [the state] may waive at pleasure' ".

*Maine*, 527 U.S. 706, 119 S.Ct. 2240, 2258, 144 L.Ed.2d 636 (1999), discussing *Hilton v. South Carolina Public Railways Comm'n*, 502 U.S. 197, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (respondent did not raise sovereign immunity as an affirmative defense); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493, 103 S.Ct. 1962, 1971 n. 20, 76 L.Ed.2d 81 (1983), rehearing denied, *petition for cert. filed* 68 USLW 3138 (Aug. 23, 1999) (No. 99–32) (discussing House Report on the Foreign Sovereign Immunities Act which stated that sovereign immunity is an affirmative defense that must be specially pleaded). *Cf. U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 77, 108 S.Ct. 2268, 2271, 101 L.Ed.2d 69 (1988) (in a case holding that non-party witnesses may challenge subject matter jurisdiction in defending a civil contempt adjudication for failure to comply with discovery orders, the Court said, "The distinction between subject-matter jurisdiction and waivable defenses is not a mere nicety of legal metaphysics"). *But see Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 391–92, 118 S.Ct. 2047, 2054, 141 L.Ed.2d 364 (1998), wherein the Court noted that it has not decided whether "Eleventh Amendment immunity is a matter of subject matter jurisdiction." [8] This seemingly irreconcilable statement, in light of the above cited cases, is explained somewhat by the statement in *Calderon v. Ashmus*, 523 U.S. 740, 745, n. 2, 118 S.Ct. 1694, 1697 n. 2, 140 L.Ed.2d 970 (1998), rehearing denied 524 U.S. 968, 119 S.Ct. 5, 141 L.Ed.2d 766 (1998), that "While the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore may be raised at any stage of the proceedings, we have recognized that it is not coextensive with the limitations on judicial power

in Article III" (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). Even this language tends to support the view that sovereign immunity, if invoked properly, *may prevent the exercise* of federal jurisdiction but, whether or not exercised, does not *deprive* the court of its jurisdiction.

We note that *In re Sacred Heart Hospital of Norristown*, 133 F.3d 237 (3d Cir. 1998), interpreted *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), as holding that, even when the Constitution gives Congress complete law-making authority in a particular area, Congress cannot authorize suits by private parties against unconsenting states under the Eleventh Amendment. *Sacred Heart*, however, addressed only 11 U.S.C. § 106(a). It did not address the serious, and as yet unanswered, question as to whether states may assert sovereign immunity in bankruptcy cases at all.

In *Alden v. Maine* the Supreme Court spoke to the Eleventh Amendment:

... the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment. Rather, as the Constitution's structure, and its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

---

**8.** The concurring opinion in *Schacht* noted a similarity between sovereign immunity and personal jurisdiction. 524 U.S. at 393–95, 118 S.Ct. at 2055 (Kennedy, J., concurring). However, personal jurisdiction must be decided before ruling on the merits. *U.S. v. Texas Tech University*, 171 F.3d 279, 286 n. 9 (5th Cir.1999). We need not address this issue as to states that did not file claims because, in the matter before us, the Successor Corporation agreed to dismiss those states that had not filed a proof of claim. *See Gardner v. State of New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), and note 6, *supra*.

527 U.S. at ——, 119 S.Ct. at 2246–47. *See also id.*, 118 S.Ct. at 2055, citing, regarding the "plan of the Convention", *Principality of Monaco v. Mississippi*, 292 U.S. 313, 325, 54 S.Ct. 745, 747–48, 78 L.Ed. 1282 (1934) which quoted The Federalist No. 81, at 4897, and citing *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 781, 111 S.Ct. 2578, 2582, 115 L.Ed.2d 686 (1991), and *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). "When a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States." *Alden v. Maine*, 527 U.S. at ——, 119 S.Ct. at 2255–56. However, "neither the Supremacy Clause nor the enumerated powers of Congress confer authority to abrogate the States' immunity from suit in federal court." *Id.* at ——, 119 S.Ct. at 2256. The states may waive their immunity and, by ratifying the Constitution which ceded to the federal government the power to make uniform laws governing bankruptcy, U.S. CONST. art. 1, § 8, cl. 4, they arguably relinquished their sovereignty with respect to bankruptcy matters at that time. That issue, however, is for another day. Suffice it to say for now that sovereign immunity is waivable and, based on *Gardner*, those states filing proofs of claim waived it and submitted to this court's jurisdiction. The extent of that submission to jurisdiction need not be decided in this matter because the Complaint is dismissed and no action remains against the States.

Notwithstanding the foregoing, the circuits are split on whether sovereign immunity is an affirmative defense or is jurisdictional. With respect to foreign governments, the Third Circuit has referred to sovereign immunity as an affirmative defense. *Drexel Burnham Lambert Group Inc. v. Committee of Receivers for Galadari*, 12 F.3d 317 (2d Cir.1993), *cert. denied* 511 U.S. 1069, 114 S.Ct. 1644, 128 L.Ed.2d 365 (1994), and *cert. denied sub nom. Refco, Inc. v. Committee of Receivers for Galadari*, 511 U.S. 1069, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994) (referring to sovereign immunity as an "affirmative defense" and a "defense" with respect to foreign government). *See also Yakama Indian Nation v. State of Washington Dept. of Revenue*, 176 F.3d 1241 (9th Cir.1999) (affirmative defense raised by state department of revenue); *A–1 Contractors v. Strate*, 76 F.3d 930, 933 (8th Cir.1996), *aff'd* 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) ("tribal defendants ... raised the affirmative defense of sovereign immunity"); *Com. of Pa. Dept. of Environmental Resources v. U.S. Postal Service*, 13 F.3d 62, 63 (3d Cir.1993) (referring to "the affirmative defense of sovereign immunity" raised by the Postal Service); *Farias v. Bexar County Board of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 873 (5th Cir.1991), rehearing denied by 931 F.2d 892 (5th Cir.1991), *cert. denied* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991) (referring to "affirmative defenses of qualified and sovereign immunity" raised by County); *Roque v. U.S.*, 857 F.2d 20 (1st Cir.1988) (referring to the affirmative defense of sovereign immunity raised by the United States); *Benjamin v. U.S.*, 833 F.2d 669, 671 (7th Cir.1987) ("the United States raised the affirmative defense of sovereign immunity"); *Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir.1987), *cert. denied* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987), and *cert. denied* 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987) (regarding Foreign Sovereign Immunities Act, "sovereign immunity is an affirmative defense which must be specially pleaded"); *Daniels v. Williams*, 720 F.2d 792 (4th Cir.1983), *aff'd* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (due process violation not stated by prison inmate despite possibility of

sovereign immunity defense); *In re Adirondack Railway Corp.,* 726 F.2d 60 (2d Cir.1984) (referring to state's affirmative defense of sovereign immunity); *Bentley v. Cleveland County Board of County Commissioners,* 41 F.3d 600, 604 (10th Cir.1994) ("qualified and absolute immunity are affirmative defenses and must be pleaded").

Cases stating that sovereign immunity is jurisdictional include *Doe v. University of Illinois,* 138 F.3d 653, 656 n. 2 (7th Cir. 1998), *vacated* —— U.S. ——, 119 S.Ct. 2016, 143 L.Ed.2d 1028 (1999), *reinstated in part (rejecting University of Illinois Eleventh Amendment immunity)* 1999 WL 993728 (7th Cir. Oct. 29, 1999) (TABLE, TEXT IN WESTLAW, NO. 96–3511, 96–4148) (Eleventh Amendment immunity defense is a question of courts' subject matter jurisdiction); *Harmon Industries, Inc. v. Browner,* 191 F.3d 894 (8th Cir.1999) (in suit against EPA and its administrator); *U.S. v. Texas Tech University,* 171 F.3d 279 (5th Cir.1999). *But see* Foreign Sovereign Immunities Act cases: *Soudavar v. Islamic Republic of Iran,* 186 F.3d 671, 673 (5th Cir.1999) (1994) (" 'Under the FSIA, a court in the United States can exercise subject matter jurisdiction over a foreign sovereign only if an exception to sovereign immunity applies.' *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C.,* 923 F.2d 380, 386 (5th Cir.1991)"); *Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.,* 183 F.3d 1277 (11th Cir.1999) (regarding FSIA also); *Rein v. Socialist People's Libyan Arab Jamahiriya,* 162 F.3d 748, 763 n. 13 (2d Cir.1998) (jurisdictional issue with respect to foreign state)[9]; *cf.* actions against the United States: *Presidential Gardens Associates v. U.S. Dept. of Housing and Urban Development,* 175 F.3d 132, 139 (2d Cir.1999) (waiver of sovereign immunity is a prerequisite to the exercise of subject matter jurisdiction against the sovereign but subject matter jurisdiction and sovereign immunity are "wholly distinct issues").

■ Several circuit cases cite *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997), for the proposition that the Eleventh Amendment "enacts a sovereign immunity from suit", not a nonwaivable limit on the federal judiciary's subject matter jurisdiction: *Litman v. George Mason University,* 186 F.3d 544, 550 (4th Cir. 1999); *Bradley v. Arkansas Dept. of Education,* 189 F.3d 745, 749 (8th Cir.1999); *In re Sealed Case No. 99–3091,* 192 F.3d 995 (D.C.Cir.1999); *U.S. v. SCS Business and Technical Institute, Inc.,* 173 F.3d 890, 892 (D.C.Cir.1999), *petition for cert. filed* 68 USLW 3116 (Aug. 02, 1999) (NO. 99–21). However, the Eleventh Amendment merely clarifies the constitutional power reserved to the states. It added nothing to the state's sovereign status. *See Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991) (the Eleventh Amendment confirms our constitutional structure; i.e., states entered the federal system with their sovereignty intact and Article III's authority is limited by it).

---

**9.** *Rein* cites *Seminole* as holding that sovereign immunity is jurisdictional. Our reading of *Seminole,* however, is that it recognizes that sovereign immunity can be waived. As noted in text *supra,* the Supreme Court has consistently recognized that states may waive their immunity. Federal Rule of Civil Procedure 8(c) sets forth affirmative defenses and includes "... any other matter constituting an avoidance or affirmative defense." Rule 9(a) requires a party to "negative[ly] aver[ ]" any issue concerning the capacity of any party to sue or to be sued. Proposing the construct that sovereign immunity is akin to a personal privilege which must be pled is consistent with Rule 8 and Rule 9. *See* note 7, *supra.* The court handling the adjudication need not raise the issue of sovereign immunity. The state must do so itself.

*See also* THE FEDERALIST PAPERS No. 42, at 267–71 (James Madison) (Clinton Rossiter ed., 1961), in which James Madison articulates an analysis of the need for uniformity in bankruptcy.[10]

In light of the foregoing we conclude that sovereign immunity is a waivable affirmative defense, not a bar to subject matter jurisdiction. We stated in our July 9, 1999, Memorandum Opinion that our Order of that date applied only to states filing claims in the bankruptcy. Under *Gardner v. State of New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), the filing of a claim waives immunity.[11] *See* note 6 and accompanying text, *supra.* Accordingly, we have jurisdiction to address

the Successor Corporation's complaint on the merits.

For the reasons stated, the Successor Corporation's motions for reconsideration will be denied.

---

10. In The Federalist Papers James Madison described the powers of the federal government in Article I vis-a-vis those of the states. He divided the federal government's powers into classes. His discourse on the "third class" informs us.

> The powers included in the *third* class are those which provide for the harmony and proper intercourse among the States.
> Under this head might be included the particular restraints imposed on the authority of the States and certain powers of the judicial department.... I shall confine myself to a cursory review of the remaining powers comprehended under this third description, to wit: to regulate commerce among the several States and the Indian tribes; to coining money, regulate the value thereof and of foreign coin; to provide for the punishment of counterfeiting ...; to fix the standard of weights and measures; *to establish a uniform rule of naturalization, and uniform laws of bankruptcy....*
> The regulation of commerce with the Indian tribes is very properly unfettered from two limitations in the Articles of Confederation, which render the provision obscure and contradictory. The power is there restrained to Indians, not members of any of the states.... What description of Indians are to be deemed members of a State is not yet settled..... And how the trade with Indians, though not members of a State, yet residing within its legislative jurisdiction can be regulated by an external authority, without so far intruding on the internal rights of legislation, is absolutely incomprehensible. This is not the only case in which the Articles of Confederation have inconsiderately endeavored to accomplish impossi-

bilities; to reconcile a partial sovereignty in the Union, with complete sovereignty in the States....

> The dissimilarity in the rules of naturalization has long been remarked as a fault in our system.... An alien, ... legally incapacitated for certain rights in [one State], may, by previous residence only in the former [State], elude his incapacity; and thus the law of one State be preposterously rendered paramount to the law of another, within the jurisdiction of the other....
> *The power of establishing uniform laws of bankruptcy is so intimately connected with the regulation of commerce, and will prevent so many frauds where the parties or their property may lie or be removed into different States, that the expediency of it seems not likely to be drawn into question.*
> The power of prescribing by general laws the manner in which the public acts, records, and judicial proceedings of each State shall be proved, and the effect they shall have in other States, is an evident and valuable improvement on the clause relating to this subject in the Articles of Confederation.... *The power here established may be rendered a very convenient instrument of justice, and be particularly beneficial on the borders of continuous States, where the effects liable to justice may be suddenly and secretly translated in any stage of the process within a foreign jurisdiction.*

THE FEDERALIST PAPERS No. 42, at 267–71 (James Madison) (Clinton Rossiter ed., 1961) (emphasis added).

11. We need not determine the extent of a waiver effected by the filing of a proof of claim in this case.